**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Brendan A. Johnson (SBN 366552)
bjohnson@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff Marco Antonio Quezada*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCO ANTONIO QUEZADA,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF HUNTINGTON BEACH; and DOES 1 through 10, inclusive,<br><br>Defendants. | 8:26-cv-02129-FWS (CTSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF HUNTINGTON BEACH'S MOTION TO DISMISS (DKT. 11)**<br><br>Hearing Date: December 17, 2026<br>Hearing Time: 10:00 a.m.<br>Location: 10D — Santa Ana |

# TABLE OF CONTENTS


I. INTRODUCTION .... 1
II. BACKGROUND .... 1
III. LEGAL STANDARD .... 2
IV. DISCUSSION .... 3
A. The Complaint Pleads Sufficient Facts .... 3
B. Plaintiff's Section 1983 Claims Are Not Asserted Against the City .... 5
C. The Fourth Cause of Action States a Claim .... 5
D. The Fifth Cause of Action States a Claim .... 7
1. The Complaint pleads specific training deficiencies. .... 7
2. A deadly-force encounter with a civilian experiencing a mental health crisis falls within the single-incident category recognized in *Canton*. .... 8
3. The word "negligent" does not defeat the claim. .... 9
E. The Sixth Cause of Action States a Claim .... 10
1. A policymaker's affirmative approval of a shooting states a ratification claim. .... 10
2. The details the City demands are in its own files. .... 10
F. Plaintiff's State Law Claims Are Not Conclusory .... 11
1. Battery .... 11
2. Negligence .... 11
3. The Bane Act .... 13
G. Punitive and Treble Damages .... 13
H. Plaintiff Requests Leave to Amend .... 14
V. CONCLUSION .... 14

# TABLE OF AUTHORITIES

## Cases

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) .......... 4
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2, 3
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 2
*Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) .......... 8
*C.A. v. William S. Hart Uninion High Sch. Dist.*, 53 Cal. 4th 861 (2012) .......... 12, 13
*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047 (9th Cir. 2011) .......... 2
*Capogrosso v. Sup. Ct.*, 588 F.3d 180 (3rd Cir. 2009) .......... 2
*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) .......... 6, 8, 9
*Connick v. Thompson*, 563 U.S. 51 (2011) .......... 8, 9
*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655 (9th Cir. 1992) .......... 14
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .......... 14
*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 3
*Estate of Chivrell v. City of Arcata*, 694 F. Supp. 3d 1218 (N.D. Cal. 2023) .......... 9
*Foman v. Davis*, 371 U.S. 178 (1962) .......... 14
*Gabriel v. Cnty. of Sonoma*, 725 F. Supp. 3d 1062 (N.D. Cal. 2024) .......... 10
*Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) .......... 12
*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003) .......... 2
*In re Akins*, 640 B.R. 687 (Bankr. E.D. Cal. 2022) .......... 4

*Leatherman v. Tarrant Cnty.*,
507 U.S. 163 (1993) .......... 3
*Mackie v. Cnty. of Santa Cruz*,
444 F. Supp. 3d 1094 (N.D. Cal. 2020) .......... 8
*Martinez v. Newport Beach City*,
125 F3d 777 (9th Cir. 1997) .......... 14
*Monell v. Dep't of Soc. Services*,
436 U.S. 658 (1978) .......... 5
*Munoz v. City of Union City*,
120 Cal. App. 4th 1077 (2004) .......... 12
*N. Star Int'l v. Arizona Corp. Comm'n*,
720 F.2d 578 (9th Cir. 1983) .......... 3
*Oviatt v. Pearce*,
954 F.2d 1470 (9th Cir. 1992) .......... 6
*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .......... 14
*Paratt v. Taylor*,
451 U.S. 527 (1981) .......... 3
*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) .......... 5
*Ramirez v. Cnty. of Los Angeles*,
839 F. Supp. 3d 1232 (C.D. Cal. 2026) .......... 10
*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......... 13
*See Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) .......... 3
*Shaw v. California Dep't of Alcoholic Beverage Control*,
788 F.2d 600 (9th Cir. 1986) .......... 6
*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 4, 10
*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 3
*United States v. Reese*,
2 F.3d 870 (9th Cir. 1993) .......... 13

**Other Authorities**

Judicial Council Of California Civil Jury Instruction 1305B .......... 11
Judicial Council Of California Civil Jury Instruction 400 .......... 11
Judicial Council Of California Civil Jury Instruction 441 .......... 12

**Rules**

Federal Rule of Civil Procedure 11 ....................4
Federal Rule of Civil Procedure 15 ....................14
Federal Rule of Civil Procedure 8 ....................2, 4

# I. INTRODUCTION

This case arises from the unjustified police shooting of Plaintiff Marco Antonio Quezada, a 28-year-old man experiencing a mental health crisis. On July 31, 2025, Huntington Beach police officers responded to a call for service and contacted Mr. Quezada outside his residence. The responding officers knew or should have known that Plaintiff was experiencing a mental health crisis. Although Mr. Quezada was unarmed and posed no imminent threat to anyone, Huntington Beach Police Department officers shot him multiple times without warning, striking him approximately five to six times, causing catastrophic injury.

Plaintiff brings claims under federal and state law for excessive force, denial of medical care, and municipal liability. In response, the City of Huntington Beach filed a perfunctory motion to dismiss, supported by only a few pages of undeveloped argument. The Motion asks the Court to treat Plaintiff's allegations as conclusions and to fault Plaintiff for not pleading facts that are in the City's exclusive possession, including the identities of the shooting officers, the contents of the City's training, and the record of its internal review.

The Motion should be denied in its entirety. Not only are Plaintiff's allegations more than sufficient to state viable claims for relief, but the City has failed to satisfy its burden as the moving party on a Rule 12(b)(6) motion.

# II. BACKGROUND

On July 31, 2025, Huntington Beach Police Department ("HBPD") officers responded to a call for service in the 18000 block of Mora Kai and contacted Plaintiff outside his residence. The officers knew or should have known that Plaintiff was experiencing a mental health crisis. (Compl. ¶ 16.) Without giving proper commands, instructions, or warnings, the officers fired, striking Plaintiff approximately five to six times. (Compl. ¶ 17.) Mr. Quezada was unarmed, did not verbally threaten the officers or any other person, and did not pose an imminent threat of death or serious bodily injury to the HBPD officers or any other person.

(Compl. ¶ 18.) The officers failed to give a verbal warning that deadly force would be used, even though it was feasible. (Compl. ¶ 19.) The involved officers did not use de-escalation tactics, did not give Plaintiff time and space, and did not consider whether Mr. Quezada could understand them. (Compl. ¶ 21.) After the shooting, the involved officers failed to properly summon medical attention for, or provide medical aid to, Mr. Quezada. (Compl. ¶ 22.)

The shooting caused catastrophic injury. Plaintiff suffered severe physical and mental pain and suffering, including a shattered pelvis and loss of nerve sensation from his hip to his knee. (Compl. ¶ 23.)

Plaintiff filed his Complaint for Damages on August 6, 2026. (Dkt. 1.) Defendant City filed its Motion to Dismiss on November 12, 2026 (Dkt. 11.).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. Fed. R. Civ. P. 8(a)(1)-(3); *see Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 662.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983). Dismissal is appropriate only where the "defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (emphasis in original).

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in civil rights cases. *Id.*; *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

## IV. DISCUSSION

### A. The Complaint Pleads Sufficient Facts

The City first argues broadly that the Complaint does not contain enough facts to state a claim. (Mot. at 3.) The City briefly identifies two alleged

deficiencies. First, the City notes that the Complaint does not identify the involved officers. Federal Rule of Civil Procedure, Rule 8(a)(2) requires "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Rule 11(b) further contemplates that pleadings are certified to the best of the pleader's knowledge, information, and belief, and that factual contentions may be ones that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Courts have read Rule 8 and Rule 11 together to permit plaintiffs to plead facts they believe to be true but that lack evidentiary support at the time of the pleading. *In re Akins*, 640 B.R. 687, 698 (Bankr. E.D. Cal. 2022) (internal citations omitted). "The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

The names of the involved officers are within the exclusive custody and control of the City. Plaintiff did not know the names of the involved officers when drafting the Complaint and to this day does not know their true identities. (Compl. ¶ 10.) Plaintiff has already stated that he will seek leave to amend the Complaint when the true names of the DOE Defendants are discovered. (*Id.*) This cannot happen without the parties engaging in meaningful discovery. Until then, Plaintiff is entitled to allege the involvement of DOES in place of Defendants whose identities are known exclusively to the City.

Second, the City argues that the allegation that Mr. Quezada posed no imminent threat merely restates Penal Code § 835(a). (Mot. at 3.) Plaintiff's allegation does not stand alone: the officers knew or should have known that Mr. Quezada was experiencing a mental health crisis (Compl. ¶ 16); Plaintiff was

unarmed and made no verbal threats (Compl. ¶ 18); no warning was given although one was feasible (Compl. ¶ 19); the officers failed to use de-escalation tactics, give Plaintiff time and space, or consider whether he could understand them (Compl. 21); no serious crime was at issue (Compl. ¶ 30); and less intrusive options were readily available (Compl. ¶ 85). These are facts, not legal conclusions, that taken together plausibly support the inference that Mr. Quezada did not present an imminent threat when he was shot.

The Complaint contains more than a short plain statement. The Complaint contains detailed allegations of the involved officers wrongful conduct based on information and belief and facts known to Plaintiff. To the extent that the Motion seeks to dismiss the Complaint on insufficient facts, it should be denied.

**B. Plaintiff's Section 1983 Claims Are Not Asserted Against the City**

As Plaintiff's counsel indicated during the parties conference of counsel under Local Rule 7-3, Plaintiff agrees that § 1983 imposes no vicarious liability, and the Complaint makes no such assertion. The First, Second, and Third Claims are pleaded against Defendants DOES 1-10 only. The Complaint seeks to hold Defendant City liable for direct liability under *Monell* and for vicarious liability only on the state law claims. (Compl. ¶ 12.) Because no § 1983 *respondeat superior* claim is asserted against the City, there is nothing to dimiss, and the request for dismissal "without leave to amend" should be dismissed as moot.

**C. The Fourth Cause of Action States a Claim**

A municipality may be held liable under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978), where a constitutional violation was caused by an official policy, custom, or practice of the municipality. A "policy" refers to a formally adopted rule, ordinance, or directive. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, *Monell* liability is not limited to written policies; a municipality may also be liable for a longstanding custom or practice that, while not formally adopted, is so persistent and widespread that it constitutes the entity's

standard operating procedure. *See Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) (*Monell* liability may arise from an informal pattern of repeated unconstitutional conduct by public officials).

*Monell* liability may also be based on a municipality's policy of inaction or deliberate indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (municipality liable for failure to implement procedural safeguards to protect constitutional rights).

Here, Plaintiff has alleged with specificity that the City of Huntington Beach maintained and tolerated a widespread custom and practice of unconstitutional conduct by its law enforcement officers, including employing officers whom the CITY knew or should have known had a dangerous propensity of abusing their authority; inadequately supervising officers whom they knew or should have known had the aforementioned propensities; failing to train officers and institute appropriate policies regarding the excessive use of deadly force; maintaining grossly inadequate procedures for reporting, investigating, and disciplining the intentional misconduct of City police officers; failing to discipline City officers for conduct such as excessive use of deadly force and unlawful detention; and ratifying the misconduct of, and failing to properly investigate, said officers. (Compl. ¶¶ 60(a–h).) Plaintiff also alleges that these constitutional violations were the predictable result of systemic failures in supervision, training, discipline, and accountability, including the City's longstanding practice of preparing investigative reports designed to vindicate the use of excessive deadly force independent of whether such use was justified, issuing public statements exonerating such use of excessive force, and failing to objectively and independently review investigative reports for accuracy or completeness and

instead accepting unwarranted conclusions. (Compl. ¶¶ 63(a–d).) The Complaint further alleges that it is the City's policy, custom, and practice not to objectively investigate prior wrongful shootings and instead to officially claim that such incidents are justified. (Compl. ¶ 61.)

These policies, customs, and practices encourage HBPD police officers to believe that wrongful shootings and excessive deadly force are permissible and will be permitted by the City. (Compl. ¶ 62.)

Plaintiff also alleges that these customs and failures were not isolated or new, but long-standing and well known to City policymakers and supervisors. (Compl. ¶ 65.) The complaint specifically connects these institutional failures to the harm suffered by Plaintiff, alleging that the unconstitutional shooting and subsequent denial of medical care were direct results of the City's deficient policies and entrenched practices. (Compl. ¶ 62.)

Taken together, these detailed and plausible allegations are sufficient to state a *Monell* claim based on an unconstitutional policy, practice, or custom that was the moving force behind the violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's Fourth Claim should proceed.

**D. The Fifth Cause of Action States a Claim**

1. <u>The Complaint pleads specific training deficiencies.</u>

The Complaint identifies the subjects in which the training was deficient. Plaintiff alleges inadequate training in handling encounters with people who display symptoms of mental illness, the use of lethal force and deadly weapons, and medical care for detainees. (Compl. ¶ 71.) The Complaint also identifies de-escalation, fear management, proper police tactics such as situational awareness, and effective pre-force communication. (Compl. ¶¶ 75(a–d).) These deficiencies are tied to Peace Officer Standards and Training ("POST") training standards. (Compl. ¶ 73.) The Complaint further alleges that the officers' conduct during their encounter with Mr. Quezada reflects those specific gaps: the officers escalated

rather than deescalated, gave conflicting and simultaneous commands, and used deadly-force on an unarmed man experiencing a mental health crisis without warning, even though it was feasible to warn him. (Compl. ¶¶ 18, 27, 28 75(a).)

Allegations of this kind satisfy the pleading standard. In *Mackie v. Cnty. of Santa Cruz*, 444 F. Supp. 3d 1094, 1112-1113 (N.D. Cal. 2020), a court in the Northern District of California sustained a failure to train claim that alleged specific training failures with regard to those "who are suffering from acute, mental instability, and exhibit violent tendencies." The Complaint here is at least as specific. The Complaint also expressly alleges that the city and its supervisors were deliberately indifferent ot the obvious consequences of the failure to train and that the failure was the moving force behind Plaintiff's injury. (Compl. ¶¶ 72, 76.)

2. <u>A deadly-force encounter with a civilian experiencing a mental health crisis falls within the single-incident category recognized in *Canton*.</u>

The City argues that the Plaintiff has not alleged a pattern or deficiency in the City's training. Although a pattern of similar violations is "ordinarily necessary" to show deliberate indifference in a failure to train case, the Supreme Court has preserved single-incident liability "in a narrow range of circumstances." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (quoting *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)) (citing *Canton*, 489 U.S. at 390, n. 10 (1989)) ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious … that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).

In *Canton*, the Court used the example of a city that arms its officers and sends them into the public to arrest fleeing felons without training on the constitutional limitations of deadly force. *Canton*, 489 U.S. at 390, n. 10. In such an instance, "the need to train officers in the constitutional limitations on the use of

deadly force can be said to be "so obvious" that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id*. By way of this example, "[t]he Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

This case lies at the core of *Canton*'s example. HBPD officers encountered a man they knew or should have known was in a mental health crisis. (Compl. ¶ 16.) This is a usual and recurring situation for armed patrol officers. (Compl. ¶¶ 71, 74.) The officers then made the most consequential decision an officer can make, shooting Mr. Quezada multiple times. Thus, the need to train officers to deal with civilians in a mental health crisis is "so obvious," that the City's failure to train its officers to not use escessive deadly force is within the "narrow range of cases" contemplated by the Supreme Court's precedent. *Connick*, 563 U.S. at 60-72; *Canton*, 489 U.S. at 390, n. 10; *see also Estate of Chivrell v. City of Arcata*, 694 F. Supp. 3d 1218, 1238-1239 (N.D. Cal. 2023) (holding that a failure to train claim arising from a police shooting of a mentally disabled man plausibly fell within the single incident exception because the officers were making "life-threatening decisions").

3. <u>The word "negligent" does not defeat the claim.</u>

The City notes that the Complaint describes the training as "negligent." (Mot. at 5.) Plaintiff does not contend that negligence suffices for *Monell* liability. The Fifth Claim expressly pleads deliberate indifference. (Compl. ¶ 72.) Read as a whole, the claim alleges the required standard of fault.

For the foregoing reasons, Plaintiff has properly alleged a failure to train. Therefore, Plaintiff's Fifth Claim should not be dismissed.

### E. The Sixth Cause of Action States a Claim

1. A policymaker's affirmative approval of a shooting states a ratification claim.

The City argues that the "only factual allegation" is that the officers were not disciplined and that a mere failure to discipline is not ratification. (Mot. at 5.) That misreads the Complaint. Plaintiff alleges, on information and belief, that the City and Defendant DOE Supervisors made a formal decision that the shooting was within the HBPD's policies and protocols, even though Plaintiff was not an imminent threat. (Compl. ¶ 57.) Plaintiff further alleges that a final policymaker knew of and specifically approved the involved officers' conduct and the bases for them. (Compl. ¶ 81.) The City's failure to discipline or retrain any involved officer corroborates that approval. (Compl. ¶ 59.)

Further, on a full evidentiary record, courts have held that an administrative determination that a use of force was "within" policy, approved by a final policymaker, permits a jury to find ratification. *Gabriel v. Cnty. of Sonoma*, 725 F. Supp. 3d 1062, 1078 (N.D. Cal. 2024); *see also Ramirez v. Cnty. of Los Angeles*, 839 F. Supp. 3d 1232, 1252-53 (C.D. Cal. 2026). If such a finding can carry a ratification claim to a jury, an allegation of the same finding states a claim.

2. The details the City demands are in its own files.

The City faults Plaintiff for not alleging "who, when, or on what record" the within-policy finding was made. (Mot. at 5.) The facts the City seeks concern the City's internal review of its own officers' shooting. They are uniquely within the City's possession, and Plaintiff may plead them on information and belief. *See Soo Park*, 851 F.3d at 928. The Complaint alleges that, on information and belief, final policymakers who knew the defendant officers' acts and the bases for them determined that those acts were "within policy." (Compl. ¶¶ 81-82.) To dismiss Plaintiff's Ratification claim at this stage is premature and inconsistent with the

federal pleading standard. Therefore, Plaintiff's Ratification claim should not be dismissed.

**F. Plaintiff's State Law Claims Are Not Conclusory**

1. <u>Battery</u>

Under California law, a peace officer may be held liable for battery if the officer uses deadly force for any reason other than in defense of human life. CACI No. 1305B. Battery by Peace Officer (Deadly Force) – Essential Factual Elements.

Defendant argues that Plaintiff's battery claim fails "without facts about the incident" without ever stating what facts are missing and why Plaintiff's facts are inadequate. (Mot. at 5.) Here, the complaint alleges that DOE OFFICERS intentionally shot Mr. Quezada with lethal force. (Compl. ¶ 85.) The complaint further alleges that Mr. Quezada was not committing a crime or resisting arrest, and was not an imminent threat of death or serious bodily injury to the officers or any other person. (*Id.*) The Complaint further alleges that Mr. Quezada lacked the present ability, opportunity, or apparent intent to cause death or serious bodily injury, and that the officers gave no adequate warning before using lethal force. (Compl. ¶¶ 87-88.)

These allegations support a plausible inference that the use of deadly force was objectively unreasonable under the circumstances and therefore unlawful under California law.

Therefore, this portion of the Motion should be denied.

2. <u>Negligence</u>

Under California law, negligence requires a showing that the defendant owed a duty of care, breached that duty, and caused harm as a result. CACI No. 400. Negligence – Essential Factual Elements. Police officers have a duty to use reasonable care in deciding whether to use deadly force and in the manner in which such force is applied. This standard is reflected in CACI 441, which instructs that an officer may only use deadly force when it is necessary to defend human life.

CACI No. 441. Negligent Use of Deadly Force by Peace Officer – Essential Factual Elements. Under California law, an "officer's duty to act reasonably when using deadly force extends to preshooting conduct." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 632 (2013).

The City first argues that the Complaint "identifies no tactical decision." (Mot. at 6.) However, the Complaint alleges that DOE OFFICERS contributed to Plaintiff's disorientation by shouting conflicting and inadequate commands, used lethal force without waning, and failed to provide or summon timely medical care after the shooting. (Compl. ¶ 96.) Plaintiff further alleges the officers failed to de-escalate, failed to give Plaintiff time and space, and failed to approach him in a non-threatening manner or consider wherher he could understand them. (Compl. ¶ 21.) These allegations, taken as true, demonstrate that DOE OFFICERS' conduct fell below the standard of care that a reasonably careful officer would have used under similar circumstances.

Second, the City argues that the Negligence Claim invokes Government Code section 815.6 without identifying an enactment, and that a direct claim for negligent hiring and supervision cannot be maintained against a public entity absent a statutory duty. (Mot. at 6.) Neither argument warrants dismissal. The Complaint pleads the City's state law liability as vicarious. (Compl. ¶¶ 12, 99.) Under section 815.2(a), "the public entity is vicariously liable for any injury which its employee causes . . . to the same extent as a private employer." *C.A. v. William S. Hart Uninion High Sch. Dist.*, 53 Cal. 4th 861, 868 (2012). California courts have long held that a city may be vicariously liable under section 815.2 for its officers' unreasonable use of deadly force. *Id*. at 874 (discussing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004)). Because the Eight Claim states a claim for the DOE OFFICERS' own negligence, it survives regardless of the section 815.6 reference. As to the supervisory defendants, the City may be vicariously liable for the supervisors' negligence where the supervisors themselves

owe a duty to the plaintiff. *C.A.*, 53 Cal. 4th at 875 (holding a school district could be held liable where its administrators knew or should have known of an employee's dangerous propensities "but neveretheless hired, retained and failed to properly supervise her.").

Accordingly, Plaintiff has adequately stated a claim for negligence under California law and this portion of the Motion should be denied.

3. <u>The Bane Act</u>

The Ninth Circuit has stated that "reckless disregard" for a person's constitutional rights is evidence of a violation of the Bane Act. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (holding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)). The Bane Act claim rests on the interference with Plaintiff's right to be free from unreasonable searches and seizures under the United States and California Constitutions. Plaintiff has set forth sufficient facts to establish that the responding officer acted with a reckless disregard for Plaintiff's constitutional rights. The officers shot an unarmed man whom they knew or should have known was in a mental health crisis five to six times without proper warning although he had threatened no one and was not committing a crime or resisting arrest, (Compl. ¶¶ 16-18, 108.) The officers then prevented medical personnel from timely rendering medical aid. (Compl. ¶ 51.)

Such conduct showed a reckless disregard for Plaintiff's right to be free of excessive and unreasonable force. Accordingly, Plaintiff's Bane Act claim should not be dismissed.

**G. Punitive and Treble Damages**

The City argues they are immune from punitive and treble damages. Plaintiff does not seek, and the Complaint does not plead, punitive nor treble damages against the City. The Prayer seeks punitive damages "against the individual

defendants." (Prayer for Relief ¶ E.) Plaintiff's request for treble damages, attorney's fees, and costs under § 52.1 against the individual defendants is unaffected by Government Code § 818, which applies to public entities. Therefore, the Motion is moot as to this point.

**H. Plaintiff Requests Leave to Amend**

Should this Court be inclined to grant the City's Motion, then Plaintiffs respectfully request that they be permitted to amend their Complaint to cure any deficiencies identified by the Court. Federal Rules of Civil Procedure, Rule 15(a)(2), provides that leave to amend "shall be freely given when justice so requires." The Ninth Circuit has held that "[t]his policy is applied with 'extraordinary liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Indeed, "leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martinez v. Newport Beach City*, 125 F3d 777, 785 (9th Cir. 1997).

**V. CONCLUSION**

For the reasons set forth above, the Court should deny the City's Motion in its entirety. The Motion lacks developed legal arguments, and ignores well-pleaded factual allegations that support each of Plaintiff's claims. In the alternative, if the Court is inclined to grant any portion of the Motion, Plaintiff respectfully requests leave to amend.

/ / /

/ / /

Respectfully Submitted,

Dated: November 25, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Brendan A. Johnson*

Dale K. Galipo
Brendan A. Johnson
*Attorneys for Plaintiff Marco Antonio Quezada*

## Certificate of Compliance

The undersigned, counsel of record for Plaintiff Marco Antonio Quezada, certifies that this brief contains **4505** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: November 25, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: */s/ Brendan A. Johnson*
Dale K. Galipo
Brendan A. Johnson
*Attorneys for Plaintiff Marco Antonio Quezada*